```
                UNITED STATES DISTRICT COURT
                EASTERN DISTRICT OF MISSOURI
                       EASTERN DIVISION
```

CRYSTAL L. SANSOUCIE,            )
                                 )
         Plaintiff,              )
                                 )
    v.                           )    No. 4:10 CV 307 DDN
                                 )
MICHAEL J. ASTRUE,               )
Commissioner of Social Security, )
                                 )
         Defendant.              )

**MEMORANDUM**

This action is before the court for judicial review of the final decision of defendant Commissioner of Social Security denying the application of plaintiff Crystal L. Sansoucie for disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401, et seq., and for supplemental security income (SSI) benefits based on disability under Title XVI of the Act, 42 U.S.C. §§ 1381, et seq. The parties have consented to the exercise of plenary authority by the undersigned United States Magistrate Judge pursuant to 28 U.S.C. § 636(c). For the reasons set forth below, the court affirms the decision of the Administrative Law Judge (ALJ).

**I. BACKGROUND**

Plaintiff was born on February 8, 1957. On March 30, 2007, she filed her applications, alleging a June 30, 2006 onset date, and alleging disability based on back and left ankle problems, high blood pressure, depression, and a history of cancer. (Tr. 95-102, 103-06.) She amended her onset date to October 26, 2006 (Tr. at 11.) Her claim was denied, and on July 25, 2007 she requested a hearing before an ALJ.[1] (Tr. 11.)

---

[1]Missouri is one of several test states participating in modifications to the disability determination procedures which apply in this case. 20 C.F.R. §§ 404.906, 404.966 (2007). These modifications include, among other things, the elimination of the reconsideration step. See id.

On November 29, 2007, following a hearing before an ALJ, plaintiff was found not disabled. (Tr. 11-14.) On December 17, 2009, after considering additional evidence from plaintiff, the Appeals Council denied her request for review. (Tr. 1-4.) Thus, the decision of the ALJ stands as the final decision of the Commissioner.

## II. MEDICAL HISTORY

On April 19, 2000, plaintiff underwent surgery by Scott A. Vanness, D.O., for a right distal radius (forearm bone) fracture. (Tr. 201.) She followed up with Dr. Vanness through July 2000. (Tr. 197, 204-06.) On July 11, 2000, she complained of forearm pain and discomfort. She had full strength and range of motion in her wrist and elbow, and x-rays showed good healing. Dr. Vanness continued her physical therapy and ordered her to follow up in four weeks if there was no improvement. (Tr. 197.)

On December 5, 2000, plaintiff was evaluated by Dr. Vanness for trigger finger[2] in her right ring finger. (Tr. 196). On May 1, 2001, plaintiff saw Dr. Vanness for recurrence of the trigger finger. On May 21, 2001, she underwent a release procedure for her trigger finger. (Tr. 209.)

On October 11, 2005, plaintiff saw Jesse Hoff, M.D., with complaints of headaches, fatigue, heartburn, and hypertension. Dr. Hoff diagnosed hypertension and gastroesophageal reflux disease (GERD). (Tr. 184.)

On April 25, 2006, plaintiff was seen in the emergency room (ER) at Parkland Health Center for abdominal bloating and alternating constipation and diarrhea. (Tr. 241). James A. Hawk, M.D., diagnosed irritable bowel syndrome (IBS). (Tr. 242).

On May 31, 2006, plaintiff was seen in the ER at Parkland Health Center with complaints of right-sided body pains for three days. (Tr. 234.) Akeeb O. Adedokun, M.D., diagnosed an "anxiety reaction." (Tr. 234-37.)

---

[2]A condition in which the movement of the finger is arrested for a moment in flexion or extension and then continues with a jerk. Stedman's Medical Dictionary 731 (28th ed. 2006).

On August 22, 2006, plaintiff saw Donna Yates, R.N.C.S., for right leg pain and difficulty sitting. (Tr. 257.) Plaintiff rated her pain at 7-8/10, and 10/10 at her worst. (Id.) Examination revealed reduced reflexes and positive straight leg raise test. (Tr. 258.) Plaintiff reported smoking a pack of cigarettes per day for thirty years. Yates diagnosed low back pain with radiation, depression, and general fatigue. (Id.) She ordered an MRI and gave plaintiff samples of Paxil, an antidepressant. (Id.)

On August 25, 2006, plaintiff underwent an MRI of her low back, which revealed degenerative spondylosis[3] and minimal impingement at L3/4 and L4/5, as well as mild arthritis. (Id.)

On September 5, 2006, plaintiff saw Yates again for her back pain, who referred her to St. Louis for further evaluation. (Id.)

On September 17, 2006, plaintiff was seen in the ER at Parkland Health Center for a left knee sprain. (Tr. 222). Robert V. Cralle, M.D., prescribed Motrin. (Tr. 222-25). X-rays revealed borderline osteopenia or low bone mineral density. (Tr. 226.)

On October 24, 2006, plaintiff saw Phillip R. Cummings, A.P.R.N., F.N.P., for a swollen and tender left knee. Cummings prescribed non-steroidal anti-inflammatory medications. (Tr. 255.)

On October 26, 2006, x-rays revealed a small fracture of the left ankle following a fall at work that day. (Tr. 182.) On November 2, 2006, Dr. Vanness placed her in a short leg cast for three weeks. He prescribed "seated work only and temporary handicap status until her next follow-up. [He] would anticipate 6 weeks of healing for this injury and an additional 4 weeks of therapy." (Tr. 194.)

On December 28, 2006, plaintiff was seen at the Mineral Area Regional Medical Center for ankle pain. (Tr. 177-79). An examination of her left ankle and foot was unremarkable. (Tr. 179.) Dr. Mark Hassen's impression was chronic left ankle pain and "medication seeking." (Tr. 179). He prescribed Lortab, a narcotic pain reliever. (Id.)

---

[3]Degeneration or deficient development of a portion of the vertebrae. Stedman's at 1813.

On January 3, 2007, plaintiff saw Dr. Hoff for low back and leg pain. (Tr. 186.) He diagnosed degenerative arthritis in the lumbar spine and prescribed medication and physical therapy. (Id.)

On January 16, 2007, plaintiff saw Nurse Yates with multiple complaints, including back pain, constipation and/or diarrhea, and left ankle pain. (Tr. 254). Yates diagnosed IBS, lumbar disc disease, insomnia, general arthritis, and anxiety. (Id.)

On March 7, 2007, plaintiff was seen in the ER at Parkland Health Center for headaches, dizziness, and difficulty breathing. She had undergone a colonoscopy the day before that had revealed scant diverticulosis[4] in the left colon. (Tr. 218, 259.)

On March 10, 2007, an MRI of her lumbar spine revealed disc bulges/protrusions at L3/4 and L4/5. (Tr. 215.)

On March 19, 2007, plaintiff was seen in the ER at Parkland Health Center for low back pain. (Tr. 209, 212-13.) She was diagnosed with muscle spasm of the lower back, and was prescribed Vicodin, a narcotic pain reliever, and Flexaril, a muscle relaxant. (Tr. 210.)

On March 21, 2007, plaintiff was seen by Nurse Yates for back pain. (Tr. 252.) Plaintiff reported that the pain had gotten "unbearable." She was given samples of Toradol, a pain reliever. (Id.)

On April 10, 2007, plaintiff underwent a neurological exam by Franklin Hayward, II, D.O., for her low back and leg pain. (Tr. 265-66.) Dr. Hayward diagnosed degenerative disc disease and recommended a discogram, an enhanced x-ray of the intervertebral discs using contrast dye. (Id.) A discogram demonstrated discogenic[5] pain at L4-5. (Tr. 262-64, 267-68.)

On April 25, she underwent lumbar fusion surgery by Dr. Hayward. (Tr. 282-83). At a follow-up exam, she reported being "very pleased so far with the results of her surgery." On May 9, 2007, she reported improvement in her pain, but also reported twisting her back during an

---

[4]Presence of a number of diverticula of the intestine, common in middle age. Stedman's at 575-76.

[5]Denoting a disorder originating in or from an intervertebral disc. Stedman's at 550.

-4-

altercation with her teenager. Dr. Hays noted, "She also continues to smoke which I told her could interfere with her fusion and delay her results. The patient was given the name of a smoking cessation drug, Chantix. ... The patient stated she could not afford this. I told her that she is probably spending more on cigarettes each month. The patient understood." (Tr. 292-93, 315.)

On June 22, 2007, plaintiff underwent a brain MRI for suspected seizures following her back surgery two months earlier. The MRI was negative. (Tr. 313.) Plaintiff was informed she was not having seizures, but was having symptoms secondary to anxiety. (Tr. 342.)

On July 13, 2007, plaintiff was seen by Nurse Yates, who diagnosed panic attacks and anxiety. She was prescribed an anti-depressant and anti-anxiety medication.

On July 27, 2007, plaintiff reported great improvement in her lumbar pain, however, she continued to smoke. A CT scan failed to show good interbody fusion, but there was good fusion along the lateral transverse process and along the lamina posteriorly. She was instructed to stop smoking. (Tr. 317-18.)

On August 24, 2007, plaintiff was seen in the ER at Parkland Health Center for a panic attack and stress reaction. (Tr. 319-21.) She was prescribed Klonopin, used to relieve panic attacks, and instructed to follow up with her primary physician. (Tr. 338-39.)

On August 29, 2007, plaintiff was seen at the Great Mines Health Center for a panic disorder. (Tr. 341.) Klonopin and Buspar were decreased, and Xanax was prescribed. (Id.)

On September 25, 2007, she was seen at the Great Mines Health Center for acute anxiety and panic disorder. (Tr. 344.) Her Klonopin was discontinued because it made her sleepy. (Id.)

On October 22, 2007, plaintiff saw Dr. Hayward with complaints of increasing back pain. (Tr. 346.) She reported that she had been doing well but that her pain returned when she attempted to go back to work as a substitute teacher. (Id.) A CT revealed good fusion. Dr. Hayword noted "[t]he patient has made multiple remarks to the effect that 'I can't work, I have tried to work.' The patient is also noncompliant. She refused to stop smoking. I feel that this patient may have

motivating factors for not wanting to improve. She ambulates well." Dr. Hayward prescribed eight weeks of physical therapy and released her from his care for follow up with her primary doctor. (Tr. 346-47.)

On October 29, 2007, plaintiff returned to Great Mines Health Center for her back problems. (Tr. 350.) John S. Pearson, D.O., opined that she should remain off work. (Id.) He noted that she appeared very fatigued and depressed. (Id.) He diagnosed chronic low back pain, as well as depression and anxiety, for which he recommended a psychiatric consultation. (Id.)

In a Function Report - Adult dated May 11, 2007, plaintiff indicated limitation with lifting, squatting, bending, standing, reaching, walking, sitting, kneeling, stair climbing, completing tasks and concentration. (Tr. 150.) She stated that she either sleeps or sits all day and has difficulty dressing, bathing, and using the toilet. (Tr. 145-46.) She stated that she cannot lift, stand, or sit for long. (Tr. 147.)

On June 6, 2007, L. Shirley completed a Physical Residual Functional Capacity (RFC) Assessment, which indicated that plaintiff could lift 20 pounds occasionally and 10 pounds frequently; stand/walk a total of 6 hours in an 8-hour workday; and sit a total of 6 hours in an 8-hour workday. (Tr. 294-99.)

On October 6, 2009, Dr. Pearson completed a "Loan Discharge Application: Total and Permanent Disability" form, noting plaintiff's depression with generalized anxiety disorder and chronic low back pain. (Tr. 354.) He stated that plaintiff is "thus far unsuccessfully managed and permanently disabled." (Id.) He opined that plaintiff was limited "to the most sedentary activities" and that she must be able to shift positions and lay down as needed. (Id.) He noted plaintiff had difficulty with shopping, meal preparation, using the restroom, and housekeeping. (Id.) He opined that plaintiff's physical and mental conditions "[leave] her ill equipped to handle any but the simplest duties," and that "she is unable to handle any significant interpersonal interactions that are demanding or stressful." (Id.)

**Testimony at the Hearing**

On October 30, 2007, plaintiff appeared at a hearing before an ALJ and testified to the following. (Tr. 29-48.) In October 2006 she stopped working after she fell at work and broke her ankle. (Tr. 34.) She attempted CNA training in March 2007, but was unable to complete it due to back pain and foot swelling. (Tr. 32.) She is unable to start her prescribed physical therapy until she finds out if Medicaid will approve it. (Tr. 35.) She can stand about 15-20 minutes before needing to sit down. (Tr. 37.)

Her pain improved following her fusion surgery, but returned when she attempted to return to work. (Tr. 37-38.) Between April and September 2007 she was sleeping a lot and staying awake about five hours per day. (Tr. 39.) She has experienced anxiety attacks. (Tr. 41-42.) She is unable to lift a gallon of milk but could probably lift a half-gallon. (Tr. 43.) She can clean dishes for about 10 minutes before needing to sit down. (Tr. 45.)

Vocational expert (VE) Brenda Young also appeared and testified at the hearing. (Tr. 48-51.) The ALJ asked the VE to assume hypothetical limitations of lifting 20 pounds occasionally and 10 pounds frequently; standing/walking a total of 6 hours in an 8-hour workday; and sitting a total of 6 hours in an 8-hour workday. (Tr. 49.) The VE responded that such an individual could perform the requirements of plaintiff's past relevant work as a substitute teacher. (Tr. 49.)

The ALJ then asked the VE to assume the same restrictions except with lifting limited to 10 pounds occasionally, and standing/walking limited to 2 hours in an 8-hour workday. (Tr. 49-50.) The VE responded that plaintiff's past relevant work (PRW) would be precluded. (Tr. 50.) However, the VE testified that such an individual could transition to other work, such as telemarketer or customer service representative. (Tr. 50-51.) On examination by plaintiff's counsel, the VE testified that if such an individual also needed to sleep for two hours in the morning and two hours in the afternoon due to affects of medication, they would be unable to sustain employment. (Tr. 51.)

## III. DECISION OF THE ALJ

On November 29, 2007, the ALJ issued an unfavorable decision finding that plaintiff was not disabled. (Tr. 11-24.) At Step One, the ALJ found that plaintiff had not engaged in substantial gainful activity since October 26, 2006, her alleged onset date. (Tr. 13.) At Step Two, the ALJ found that plaintiff suffered from the severe impairments of degenerative disc disease and residuals of back surgery in April 2007. (Tr. 13.) The ALJ rejected plaintiff's anxiety as a severe impairment. (Id.) At Step Three, the ALJ found that plaintiff did not suffer from an impairment or combination of impairments of a severity that meets or medically equals the requirements of a listing. (Tr. 14.)

The ALJ determined plaintiff's residual functional capacity (RFC) as follows: she has the RFC to perform the full range of light work, lifting up to 10 pounds frequently and no more than 20 pounds occasionally, and sitting or standing most of the day. She has a back impairment, but it is not severe enough to rule out the modest exertional demands of light work. Her non-severe mental impairment does not limit her ability to work. (Tr. 14.)

The ALJ found that plaintiff's statements regarding the intensity, persistence, and limiting effects of her symptoms were not entirely credible. (Tr. 20.) He found that plaintiff was noncompliant with treatment due to her continued cigarette smoking. (Tr. 20, 22.)

The ALJ stated that he was giving considerable weight to plaintiff's treating and examining physicians, noting, however, that none of them placed on her any significant physical or mental limitations. (Tr. 20, 23.) The ALJ also noted that plaintiff had no prolonged hospitalizations. (Tr. 20-21.) He found that plaintiff did not prove more than mild mental impairment. (Tr. 22.)

At Step Four, the ALJ found plaintiff capable of performing her PRW as a substitute teacher, and therefore, found her not disabled under the Act. (Tr. 23.)

## IV. GENERAL LEGAL PRINCIPLES

The court's role on judicial review of the Commissioner's decision is to determine whether the Commissioner's findings comply with the relevant legal requirements and is supported by substantial evidence in the record as a whole. Pate-Fires v. Astrue, 564 F.3d 935, 942 (8th Cir. 2009). "Substantial evidence is less than a preponderance, but is enough that a reasonable mind would find it adequate to support the Commissioner's conclusion." Id. In determining whether the evidence is substantial, the court considers evidence that both supports and detracts from the Commissioner's decision. Id. As long as substantial evidence supports the decision, the court may not reverse it merely because substantial evidence exists in the record that would support a contrary outcome or because the court would have decided the case differently. See Krogmeier v. Barnhart, 294 F.3d 1019, 1022 (8th Cir. 2002).

To be entitled to disability benefits, a claimant must prove she is unable to perform any substantial gainful activity due to a medically determinable physical or mental impairment that would either result in death or which has lasted or could be expected to last for at least twelve continuous months. 42 U.S.C. §§ 423(a)(1)(D), (d)(1)(A), 1382c(a)(3)(A); Pate-Fires, 564 F.3d 935, 942 (8th Cir. 2009). A five-step regulatory framework is used to determine whether an individual qualifies for disability. 20 C.F.R. §§ 404.1520(a)(4); see also Bowen v. Yuckert, 482 U.S. 137, 140-42 (1987) (describing five-step process); Pate-Fires, 564 F.3d at 942 (same).

Steps One through Three require the claimant to prove (1) she is not currently engaged in substantial gainful activity, (2) she suffers from a severe impairment, and (3) her disability meets or equals a listed impairment. Pate-Fires, 564 F.3d at 942. If the claimant does not suffer from a listed impairment or its equivalent, the Commissioner's analysis proceeds to Steps Four and Five. Id. Step Four requires the Commissioner to consider whether the claimant retains the RFC to perform her PRW. Id. The claimant bears the burden of demonstrating she is no longer able to return to her PRW. Id. If the Commissioner determines the claimant cannot return to PRW, the burden shifts to the Commissioner

at Step Five to show the claimant retains the RFC to perform other work. Id.

## V. DISCUSSION

Plaintiff argues the ALJ erred (1) in failing to find that she suffers from a severe mental impairment, and in failing to find limitations arising from such mental impairment in determining her RFC; (2) in assessing her credibility; and (3) in determining her RFC in terms of the exertional category of "light" work, and in failing to make specific findings regarding her limitations, specifically walking. She also argues the Commissioner erred in failing to consider new and material evidence presented to the Appeals Council.

**1. Mental Impairment and Residual Functional Capacity**

The ALJ rejected plaintiff's anxiety as a severe impairment, stating that plaintiff did not prove that her mental impairment was more than mild. (Tr. 13-14, 22.) The ALJ found that plaintiff had the RFC to perform a full range of light work. (Tr. 14.) He found that she could lift 10 pounds frequently and up to 20 pounds occasionally, and that she could sit or stand for most of the day. (Tr. 14.) The ALJ made no express finding regarding her capacity for walking, nor did he assess any functional limitations attributable to her nonsevere mental impairment, anxiety. (Tr. 13-14.)

Plaintiff asserts that the ALJ erred in finding her mental condition was a nonsevere impairment. She relies on Dr. Pearson's October 2009 opinion that plaintiff's conditions were "unsuccessfully managed" and that she is "permanently disabled." (Tr. 354.) Plaintiff argues alternatively, that even if her mental impairment is nonsevere, the Commissioner should have considered it in determining her RFC.

An impairment is not severe if it amounts to only a slight abnormality and does not significantly limit the claimant's physical or mental ability to do basic work activities. Kirby v. Astrue, 500 F.3d 705, 707 (8th Cir. 2007); 20 C.F.R. § 404.1521(a). Under the regulations, the ALJ evaluates the severity of mental impairments by gauging their impact on four functional areas: (1) activities of daily

-10-

living; (2) social functioning; (3) concentration, persistence, or pace; and (4) episodes of decompensation. Cuthbert v. Astrue, 303 F. App'x 697, 699 (11th Cir. 2008) (per curiam); 20 C.F.R. § 404.1520a(c)(3). If the ALJ rates the claimant's limitations as "none" or "mild" in the first three areas, and "none" in the fourth area, the ALJ will generally conclude that the claimant's mental impairments are not severe - unless the evidence indicates that there is more than a minimal limitation in the claimant's ability to perform basic work activities. 20 C.F.R. § 404.1520a(d)(1).

Examples of basic work activities include: (1) physical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling; (2) capacities for seeing, hearing, and speaking; (3) understanding, carrying out, and remembering simple instructions; (4) use of judgment; (5) responding appropriately to supervision, co-workers, and usual work situations; and (6) dealing with changes in a routine work setting. Id. The sequential evaluation process terminates at Step Two if the impairment has no more than a minimal effect on the claimant's ability to work. Kirby, 500 F.3d at 707; Hudson v. Bowen, 870 F.2d 1392, 1396 (8th Cir. 1989).

Plaintiff's reliance on Dr. Pearson's opinion is misplaced. Plaintiff has failed to show that his opinion addresses her medical condition *before* the close of the relevant period. Dr. Pearson noted that plaintiff's disability began on October 26, 2006 and he referred to "prior records." (Tr. 353.) The ALJ appropriately noted that, with the exception of the report dated October 29, 2007, there were no other medical records identified as Dr. Pearson's. (Tr. 20, 350.) Nor did plaintiff attach any records to Dr. Pearson's opinion. It is therefore impossible to evaluate the evidence, if any, underlying Dr. Pearson's assessment of plaintiff's condition in October 2009.

The court also concludes that the ALJ properly considered plaintiff's anxiety, finding no limitations in activities of daily living, and only "mild" limitations in social functioning, and concentration, persistence, or pace. (Tr. 14.) The ALJ noted plaintiff had no history of episodes of decompensation. (Tr. 14.) The ALJ specifically noted that plaintiff routinely monitored her children's

homework and tutored her child who has special needs. (Tr. 14, 23.) The undersigned finds it was reasonable for the ALJ to infer that plaintiff had adequate concentration, persistence, and pace, as well as good ability to relate to her children.

**2.  Credibility**

Plaintiff argues the ALJ erred in assessing her credibility, specifically, her failure to follow her doctor's instructions to quit smoking and her lack of prolonged hospitalizations.

"The credibility of a claimant's subjective testimony is primarily for the ALJ to decide, not the courts." Holmstrom v. Massanari, 270 F.3d 715, 721 (8th Cir. 2001).  In assessing a claimant's credibility, the ALJ must consider: (1) the claimant's daily activities; (2) the duration, intensity, and frequency of pain; (3) the precipitating and aggravating factors; (4) the dosage, effectiveness, and side effects of medication; (5) any functional restrictions; (6) the claimant's work history; and (7) the absence of objective medical evidence to support the claimant's complaints.  Finch v. Astrue, 547 F.3d 933, 935 (8th Cir. 2008); Polaski v. Heckler, 739 F.2d 1320, 1322 (8th Cir. 1984). "An ALJ who rejects [subjective] complaints must make an express credibility determination explaining the reasons for discrediting the complaints." Singh v. Apfel, 222 F.3d 448, 452 (8th Cir. 2000).  The ALJ need not explicitly discuss each factor, however.  Goff v. Barnhart, 421 F.3d 785, 791 (8th Cir. 2005).  "It is sufficient if he acknowledges and considers [the] factors before discounting a claimant's subjective complaints." Id.

Here, the ALJ noted instances in which plaintiff's allegations conflicted with the objective medical evidence. See Forte v. Barnhart, 377 F.3d 892, 895 (8th Cir. 2004) (lack of objective medical evidence is a factor an ALJ may consider).  Specifically, plaintiff contended that she was unable to work, due in part to the fracture of her left ankle on October 26, 2006, her amended alleged onset date. (Tr. 17, 133.) However, the ALJ noted that by November 21, 2006, an x-ray revealed a stable healing left ankle fracture. (Tr. 17, 199.) Another record dated December 7, 2006, confirmed this assessment, at which time Dr. Vanness opined that plaintiff would have no activity restrictions in four weeks.

(Tr. 17, 203.) Later in December 2006, plaintiff complained that her left ankle pain was a 10, on ten-point scale, yet examination of the left ankle and foot was unremarkable. (Tr. 17, 177, 179.)

The ALJ noted that objective medical evidence supported plaintiff's complaints of back pain which required lumbar fusion surgery in April 2007. (Tr. 18.) In May 2007, x-rays revealed good alignment of the lumbar spine and that the hardware was intact. (Tr. 19, 315.) In July 2007, her neurosurgeon, Dr. Hayward, found great improvement in her lumbar pain, and a CT scan revealed "very good fusion along the lateral transverse process and along the lamina posteriorly." (Tr. 19, 317.)

As to plaintiff's complaints of seizure disorder, the ALJ noted that in June 2007, she had a normal electroencephalogram (EEG) and a negative MRI of the head. (Tr. 19, 312-13.) In August 2007, a CT of the head was normal. (Tr. 19, 333.)

In August 2007, plaintiff was assessed with stress reaction and panic attacks, later revised to panic disorder. (Tr. 19, 321, 341.) Although plaintiff had never received treatment from a mental health provider, she testified at the hearing that Dr. Pearson's office was going to arrange an appointment for her. (Tr. 20, 36.)

Examining physicians also noted signs of symptom magnification. See Baker v. Barnhart, 457 F.3d 882, 892 (8th Cir. 2006) (ALJ may draw conclusions from claimant's exaggeration of symptoms in evaluating subjective complaints). Dr. Vanness noted that plaintiff's complaints of pain were "well out of proportion to the injury stated and the time that has passed since her injury." (Tr. 17, 191.) Dr. Hassen's impression was that plaintiff was "medication seeking." (Tr. 18, 179.) Cf. Anderson v. Barnhart, 344 F.3d 809 (8th Cir. 2003) ("A claimant's misuse of medications is a valid factor in an ALJ's credibility determinations); Anderson v. Shalala, 51 F.3d 777, 780 (8th Cir. 1995) (observing that claimant's "drug-seeking behavior further discredits her allegations of disabling pain").

The ALJ also considered plaintiff's failure to take prescription medications, seek treatment, and quit smoking. The ALJ noted evidence suggesting that plaintiff might have been motivated to not improve. (Tr. 20.) Dr. Hayward expressly noted plaintiff's noncompliance with his

-13-

instruction to cease smoking, because continued tobacco use could complicate her recovery from back surgery. (Tr. 20, 293, 346.) Dr. Hayward stated, "I feel that this patient may have motivating factors for not wanting to improve." (Tr. 346.) This conflicts with plaintiff's testimony that she could not afford smoking cessation medication. (Tr. 22, 293.) The ALJ noted no evidence that plaintiff had ever explored other means to obtain smoking cessation medication. (Tr. 22.) The ALJ also agreed with Dr. Hayward that plaintiff's smoking habit was of similar cost as the smoking cessation drug. (Tr. 22, 293, 315.) The ALJ noted plaintiff's testimony that she had been prescribed a smoking cessation drug the day before the hearing, although the record indicated she had been prescribed a smoking cessation drug three months earlier. (Tr. 20, 45, 342.) The ALJ noted other examples of plaintiff's noncompliance. (Tr. 19-20, 320.)

As the ALJ noted, plaintiff had no prolonged hospitalizations. (Tr. 20-21.) Therefore, the conservative nature of plaintiff's treatment also undermines her credibility. See Loving v. Dep't. of Health & Human Services, 16 F.3d 967, 970 (8th Cir. 1994) (allegations of disabling impairment may be properly discounted because of inconsistencies such as minimal or conservative medical treatment).

The ALJ also properly considered the sporadic nature of plaintiff's work history, noting that during 13 years of the relevant 15-year period, plaintiff had no earnings, or earnings of less than $1,000 per year. (Tr. 22, 119.) The ALJ noted that any SSI benefit payment would exceed the income plaintiff earned in many of the years posted to her earnings record. (Tr. 22.)

Finally, the ALJ considered the inconsistencies between plaintiff's allegations and her activities of daily living. (Tr. 14, 23.) Plaintiff testified that she did a minimum of household chores and was unable to empty the clothes dryer due to back pain. (Tr. 45.) The ALJ noted, however, that plaintiff continued to drive despite contentions of a seizure disorder, and that she was able to supervise her children's homework, including her child with special needs, despite her complaints of disabling mental impairment. (Tr. 16, 31, 46.) Although the ability to perform activities such as light housework is not dispositive of the

-14-

issue of disability, it is one factor properly used in evaluating subjective complaints. See Davis v. Apfel, 239 F.3d 962, 967 (8th Cir. 2001). See also Brown v. Chater, 87 F.3d 963, 966 (8th Cir. 1996) (while claimant's reported daily activities may demonstrate some limitations, the ALJ does not have to believe all of claimant's assertions concerning those daily activities). Therefore, substantial evidence supports the ALJ's credibility determination.

**3.    Residual Functional Capacity and Walking Limitation**

Plaintiff also argues the ALJ erred in expressing her RFC in terms of the exertional category of "light" work and in failing to make a finding regarding her RFC to walk, in violation of SSR 96-8p. The court disagrees.

Social Security Ruling 96-8p requires that an "RFC assessment must first identify the individual's functional limitations or restrictions and assess his or her work-related abilities on a function-by-function basis. . ." Social Security Ruling 96-8p (1996). In the Eighth Circuit, an ALJ is not required to make explicit findings for every aspect of the RFC. Depover v. Barnhart, 349 F.3d 563, 567 (8th Cir. 2003.) Rather, the concern of Ruling 96-8p is "that a failure to make the function-by-function assessment 'could result in the adjudicator overlooking some of an individual's limitations or restrictions.'" Id. (quoting Ruling 96-8p). Here, the court believes the ALJ did not overlook any of plaintiff's limitations.

The ALJ found plaintiff had the RFC to perform the full range of light work, lifting up to 10 pounds frequently and no more than 20 pounds occasionally, and sitting or standing most of the day. He found that she has a back impairment, but that it is not severe enough to rule out the modest exertional demands of light work. Her non-severe mental impairment did not limit her ability to work. (Tr. 14.)

In this case, the ALJ did not make a specific finding regarding plaintiff's capacity for walking. He did, however, find that she could stand and sit for most of the workday. In Depover, the plaintiff argued the ALJ erred in failing to make a finding as to his RFC to sit, stand, and walk. 349 F.3d at 567. The court noted that the ALJ made specific

findings, and although it would have preferred that the ALJ had made
specific finding as to sitting, standing, and walking, the court did not
believe that the ALJ overlooked these functions.  Instead, the court
believed that the record demonstrated that the plaintiff was not limited
in those areas.  The court noted that all of the functions that the ALJ
specifically addressed in the RFC were those in which he found a
limitation, thus giving reason to believe that those functions that he
omitted were those that were not limited.  Id. at 567.  The court noted
that where all of the functions that the ALJ specifically addressed in
the RFC finding were those in which he found a limitation, a court can
reasonably believe that those functions that were omitted were those that
were not limited.  Id.  However, in this case, the ALJ specifically
addressed sitting and standing, areas without limitations.  As both
standing and walking involved plaintiff's left ankle, it is reasonable
to conclude that the ALJ found plaintiff had equal capacity for both
functions.

### 4.   New Evidence

Plaintiff argues the ALJ erred in failing to consider new and
material evidence presented to the Appeals Council, specifically, Dr.
Pearson's 2009 opinion that plaintiff has the RFC for significantly less
than sedentary work.  (Tr. 354.)  In November 11, 2009 correspondence,
plaintiff sent the Appeals Council a Loan Discharge Application dated July
14, 2009, in which plaintiff had applied for discharge of her student loan
debt due to total and permanent disability.  (Tr. 351-55.)  On October 6,
2009, Dr. Pearson signed and completed the form, stating plaintiff's
disability began on October 26, 2006.  (Tr. 354.)

The Appeals Council must consider additional evidence if it is new,
material, and relates to a time period before the ALJ's decision.  See 20
C.F.R. § 404.970(b), 416.1470(b); see Johnson v. Chater, 87 F.3d 1015,
1018 (8th Cir. 1996); Box v. Shalala, 52 F.3d 168, 171 (8th Cir. 1995).
To be material, new evidence must be non-cumulative, relevant, and
probative of a claimant's condition during the time period for which
benefits were denied, and there must be a reasonable likelihood that it
would have changed the Commissioner's determination.  See Woolf v.

Shalala, 3 F.3d 1210, 1215 (8th Cir. 1993).  Once it is clear that the Appeals Council has considered newly submitted evidence, the court does not evaluate the Council's decision to deny review based on new evidence; instead, its role is limited to deciding whether the ALJ's determination is supported by substantial evidence on the record as a whole, including new evidence submitted after the ALJ issued his decision.  See Stephens v. Shalala, 50 F.3d 538, 541 (8th Cir. 1995).

Here, the Appeals Council's decision makes clear that it considered this new evidence and found that the ALJ's decision was supported by the record as a whole, including the newly submitted evidence.  (Tr. 1-4, 351-55.)  The undersigned therefore concludes that remand for further consideration on this ground is inappropriate.

### VI. CONCLUSION

For the reasons set forth above, the court finds that the decision of the ALJ is supported by substantial evidence on the record and is consistent with the Regulations and applicable law.  The decision of the Commissioner of Social Security is affirmed.  An appropriate judgment order is issued herewith.

　　　　　　　　　　　　　　　　　　　/S/   David D. Noce
　　　　　　　　　　　　　　　　　**UNITED STATES MAGISTRATE JUDGE**
Signed on February 7, 2011.